Good morning. Kurt Denke here on behalf of the appellants. I'd ask to reserve five minutes of my time for rebuttal. The first issue before the court, of course, is whether the district court erred in granting the 12B6 motion on the issue of legislative immunity here. Arguments on this subject between the parties principally centered on this question, whether the substantive legislativeness of an action is still a proper consideration in determining a claim of legislative immunity after the Bogan versus Scott Harris case. And essentially, the defense position is that after Bogan, it doesn't matter if an act is substantively legislative. If it's procedurally legislative, if it's done by a vote, that's the end of the story, and there is legislative immunity. Before you get into the merits, I have a procedural question I want you to help me with. There was a motion filed by the five individual defendants to dismiss under 12B6. That's right. The plaintiff filed an opposition to that motion and at the same time filed a motion to add an additional party. Yes. The court granted the defendants, individual defendants, motion to dismiss under 12B6 and continued the motion to add an additional defendant. Yes. Thereafter, the plaintiff filed an amended complaint which had only one defendant on it. Am I correct so far? That's correct. I'm curious about the legal effect of the amended complaint on the earlier complaint. When you file an amended complaint, doesn't that eliminate the original complaint? I'm afraid you've caught me completely off guard on that one. My impression has always been that in accordance with federal rule of civil procedure 54, that no judgment or no decision of the district court disposing of individual parties to an action is final until final judgment in the civil action as a whole has been entered. True. So the original complaint and the action of the court on that was not final. Was not final at that time. Ruled on the 12B6 motion. That's correct. So if that original complaint was still before the court, you could have amended the complaint to add the town to the original five defendants. Isn't that true? I'm sorry. At any time that the original complaint was pending, certainly a motion to amend could have been presented. And that wasn't done here. What's that? That was not done here. No, that was not done. You filed an amended complaint and eliminated the five individuals. That's correct. And I believe, I'm not quite sure of the timing of the whole sequence, but at some point, the district court entered final judgment under Rule 54 in favor of the individual defendants. My understanding, however, was that because the district court did not grant leave to amend the allegations against the individual defendants, district court granted leave to amend only to add the town as a defendant. And that puts the plaintiff in the position where he has to elect, in effect, whether he's going to continue to proceed in the district court on the basis of a complaint against the town reserving the 12B6 decision for eventual appeal after final judgment, or as in this case, after, in effect, certification as a final judgment, or to drop the action entirely and proceed with the appeal of the decision. Well, I think I put you off guard because you confessed you didn't think about this problem. So why don't you go ahead for the merits. The question whether substantive legislativeness is still today a factor in judging legislative immunity is, first, the court in Bogan explicitly refuses to reach the question. Then the court says, but looking at this case, which involved a budget ordinance which eliminated 135 positions from the city staff, including the plaintiff's position, the court finds that that, on its face, it's clearly a substantively legislative action. And because it's a substantively legislative action, it is one for which the defendants are immune, regardless of whether substantive as opposed to procedural legislativeness is a consideration or not. And so, not surprisingly, procedural legislativeness, I'm not familiar with that term. Is there a definition of that in some case? The Ryan versus Burlington County case of the Third Circuit, I think, is the first to raise this distinction between procedural legislativeness and substantive legislativeness. And what the court did in Ryan was essentially recognize that some cases which deal with legislative immunity talk about the procedural aspect. They ask, was this accomplished by a body having legislative authority through a vote of a majority, through some sort of form like an ordinance which is classically legislative in its type? And that, the Ryan court characterized as procedural legislativeness. And substantive legislativeness had to do with the actual impact of the matter. That is, was the subject of the action one which was a traditional subject of legislation? Did it have a community-wide impact as opposed to a narrowly tailored impact upon specific people or property or something of that sort? I'm not familiar with the Third Circuit's case there. But I must say, the distinction doesn't really seem to me very consistent with the test in Bogan, if I understand it right. Has the Ninth Circuit ever adopted this distinction? The Ninth Circuit hasn't used that procedural slash principle in different language. And in fact, the most recent case on that is the Kaua'a. I'm not good with Hawaiian pronunciations, but it's Kahumano or something like that, which is cited. Kahumano. All right. Got the right judge for that one. That's right. And there, there's a discussion, of course, of what does it take to give rise to legislative immunity. And it's a multi-factor test, which goes to a number of different considerations, some of which have to do with the manner in which the enactment comes about, and some of which have to do with its true substance. It seems to me, though, that we've got cases following Bogan that set out a multi-factor test in our circuit. Shouldn't we be following those, like analyzing those factors rather than talking about the Third Circuit's language? Well, I think that the Third Circuit approach is actually consistent with this circuit's approach. I think the two circuits have put it a little differently, but the result is the same. In either event, both circuits agree that the narrowness of impact of a decision is a consideration in determining whether local officials are legislatively immune for specific actions. And that- Well, I hear there's only so much property around La Connor that could be the subject of some zoning ordinance that says this is going to be treated this way or that's going to be treated that way. That's true. Why can't they do this here? They've got a few, like either a couple or a handful of industrial properties in a certain area south of town. Can't they make an ordinance that says, here's how we'll deal with that? Well, I think that it is possible to act legislatively with regard to a small classification of properties. But when you have a situation such as we had here, where there are two parcels involved, where the municipal actions are in response to specific development activities undertaken by the plaintiff, one of the principal considerations here in the complaint is a moratorium. The plaintiffs file a development application, and that same day, the town adopts a development moratorium on this property and one adjacent property on which there aren't and aren't likely to be any development applications. And the question really is, is that legitimately legislative as opposed to- Isn't that the only property in that area? What's that? Weren't there just those two parcels or groups of parcels in that industrial area? Well, I think that depends on exactly how you define that industrial area. My understanding is there is more industrial property in the vicinity, but that this was a subset of that. I don't know that- I'm not familiar with the community at all, but it was described as being the south end industrial area as if that's something unique. I don't know whether it's coastline. What is the surrounding property similar or different from the two parcels affected here? To be honest, I can't tell you that much about that. I know that these are- Doesn't that make a critical difference? Because as a legislative body, if the council's focused on this part of town and this part of town only happens to consist of two parcels, isn't that still legislative? It may be one thing if it's trying to pick on a particular owner, but if it just happens this part of town, it only involves the two parcels, at least one of which is a fairly good-sized three-acre parcel, so not like picking on a single lot. What's not legislative about that? Well, first off, as for picking on a single lot, what they did was in reaction to this plaintiff's specific development proposals on this- But it's not unusual for Congress to respond to some emergency and suddenly the next thing you know, a statute's been passed because it's come to attention. Here's an area of town they want to do something with. Suddenly there are plans. If we're going to act, we ought to act today, so we're going to act. I understand the sense that maybe it's not motivated the right way, but motive isn't what we're looking at here. Right. Do we know something about this parcel that suggests that picking out this one, two parcel property is somehow distinct from what the town ordinarily does with regard to land use? Well, there's nothing in the record about the scope of that overall industrial area. There's nothing to eliminate that And I'd remind the Court this was done on a 12b-6 motion to dismiss. I think the more appropriate vehicle for this would have been on summary judgment the town of La Conner would have been in a position to put in affidavits and say, look, this is what this industrial area consists of. These are the considerations that are unique to this industrial area. There really are only two parcels in the industrial area. At the same time that we were engaged in working on this industrial area, we were engaged in a broader community-wide planning process. It's unusual, though, for a court, I don't think it's all that unusual for a court to use 12b-6 to dismiss like an action where there's legislative immunity. I mean, and it is unusual for a developer to sue the council members and the mayor rather than the town. So, I mean, how do we get this kind of an action in going in that direction as opposed to an action against the town, you know, like sort of traditional... The developer can make traditional zoning litigation up to the hilt, you know, and go up to the state supreme court, and there always would be lots of issues. What seems unusual here to me is that transforming it into a, you know, civil rights-type claim against the council members who did the zoning. I, well, first, the reason to go back to Ryan versus Burlington County that I find myself turning to a lot of the Third Circuit precedent in this area is because I practiced as a municipal defense attorney in Philadelphia for approximately the first seven years of my practice. I was in college in Philadelphia, but that doesn't mean I can follow their precedents here. No, no, what I want to tell you is that as a municipal defense attorney, I find it a surprising suggestion that it is in any way unusual to name the individuals in this type of litigation. I've defended individuals in this type of litigation dozens of times. It is probably more typical to sue the individuals and the town. That's a piece of what made me wonder. I've seen individuals, but I usually see them together, in this case, with the town. Does that suggest that something's a little askew about this, that the town wasn't brought in until later? I don't think so, and I think what my co-counsel had in mind in respect to that is simply that he viewed this as a case where at least some of these actions spring out of private motive on the part of the individual council members. I know that whenever I'm dealing with Monell defenses in litigation with municipalities, the municipal entity always points to the individuals and says, well, if they acted upon private, personal, selfish consideration, those considerations, nonetheless, were not reflective of municipal policy. And they will take a voting council like this, and they'll split it out, and they'll say, well, this member and this member may have acted upon those types of considerations, but there's no proof that these other members acted upon those considerations. And so those considerations might have contributed to the result, but they still don't reflect municipal policy. And you can easily wind up in a situation where the Monell, the Monell defenses of the city wind up being more substantial than the immunity defenses of the individuals. If I had filed the initial complaint in this matter, I would have sued both the town and the individuals. But I don't see it as evidence of bad faith to make a selection among your available defendants in deciding how to pursue a cause of action. And also, apart from Monell's restraint on like a civil rights type claim, you can also just litigate the land use issues against the city and seek injunctive relief in the state court system, right? Right. And in fact, that was done in this case previously, and there was a settlement agreement regarding some of the issues in this case, which the town went on to breach and which formed a portion of the basis of the complaint here. I mean, this was not a case of a plaintiff who resorted first to federal court by any means. I would like to reserve most of my remaining time for rebuttal. I guess what I would, I would just pass on very briefly to the issue of the Section 1988 fees. I think on the basis of the discussion of legislative immunity, which we have provided in our brief, I believe it is clear that this was not an objectively frivolous claim. It was not an objectively unreasonable claim on the part of the plaintiff to contend that these defendants were not entitled to legislative immunity. There just aren't any circumstances here to justify a fee award. There's no evidence of bad faith. What we have are a bunch of complaints from the defendants that it upset them to be sued. Which, frankly, it would be surprising if it didn't upset them to be sued. But it has nothing to do whatsoever with the issue of actual bad faith on the part of the plaintiff. Unless you have further questions for me at this point, I'd like to reserve my remaining time. Good morning, Your Honors. May it please the Court. My name is Mike Walter. I'm here as counsel for the defendants and respondents. The five individual elected officials, Aaron Berg, Dan O'Donnell, Mary Lamb, Joan Cross, and John Stevens. Several of those officials are in the courtroom here to watch these proceedings today. Your Honors, there are three issues before you today. The first is the immunity issue. The question there, fairly narrow, and that is whether the acts as alleged in the complaint, on the face of the complaint, are legislative in character, that is, within the sphere of legislative activity for typical local government decision-makers. And I submit on the record, just by looking at the complaint, it is clear that all of the actions, the allegations, and the complaint, the claims in the complaint, clearly evidence legislative-type decision-making by these individual elected officials. And I'll discuss that in more detail in just a minute. The other two issues before you, the first is on the fee issue, and that is the propriety of the award of attorney fees under Section 1988. Judge Heckman found that through a six-page order and decision that there was more than sufficient evidence to establish that the action against the individual defendants was either frivolous or vexatious or, for purposes of harassment, meeting the standard for Section 1988 attorney fees. The last issue, then, is the computation of those fees. The plaintiffs and appellants claim that they were not properly computed or that they should have been lower. They've offered virtually no evidence to support that. And I submit that under the abuse of discretion standard, Judge Heckman there made a correct, proper determination based on a pretty substantial evidentiary record with billing statements. Before I proceed to what I was planning to talk about, if it pleases the Court, I'd like to try to address a couple of the questions that were raised by Judge Alarcon and Judge Gould. The first regarding the amendment of the complaint, and I've done a little chronology of the events here because it is a little bit of an unusual procedural posture. But I'll try to answer this case. Final judgment on the dismissal of the individual defendants did not occur until November 1st or, excuse me, November 19th, 2001. That provided almost five full months of time for plaintiffs to amend the complaint, to add the town as a defendant, without having the case dismissed as a whole. And it still perplexes me to this day why they never did that. I read Judge Heckman's decision as kind of an invitation to do that. And instead of trying to amend the complaint to bring in the town as an additional defendant, which is the typical scenario I see as a municipal defense attorney, they simply abandoned the original action, named the town. And I think it's interesting that the two complaints, the amended complaint against the town and the original complaint against the five individual defendants are virtually identical. I mean, the complaint, the cause of action, paragraphs are virtually identical in every respect. And I think Judge Heckman had some concern about that in the basis for her determination of awarding attorney fees. She raised the question in one of her orders, I believe it was the attorney fee order, that, you know, what was the difference between these two lawsuits? In other words, why couldn't the plaintiffs have originally named the town as an entity? And I think that's a key issue here. I think it goes both to the nature of this action, the motives behind the lawsuit, and I think it also goes to establish the propriety of the attorney fee award. They could have named the town, at least I think they could have named the town. They have the same, they have a difference, maybe some different issues. But if they named the town in some way, would they run into a Monell issue, as was asserted by Mr. Denke? And if Mr. Denke raises Monell, then why couldn't the appellant sue the individuals? Whether it's distasteful or not to them, does he have a right to do that? Well, first of all, you know, I contend that he didn't have a right to do that because of the way plaintiffs crafted their complaint. Bear in mind, they wrote the complaint. They're the ones that made the allegations of these various acts. And the complaint is rife with claims of policy decisions, debate, discussion, lobbying on issues that I believe, based on the case law and the statutory authority we've cited, clearly establishes legislative. But putting that aside. To me, like it's legislative in nature, but advocates try to, you know, shape the law or slightly change the contours of the law on both sides. And normally that's fair, even though it's painful for clients. Why couldn't he argue that there was no legislative immunity? Well, I mean, he certainly could. And they have done that, Your Honor. And I think that gets to the merits of the immunity issue. But if I can backtrack a second to answer your question about Monell, I see Monell defenses raised all the time. I, like Mr. Denke, do almost exclusively municipal defense work for cities and elected officials. And the typical scenario I see is suits against the entity rather than individuals. Sometimes, maybe 20 percent of the cases, they name the entity and the individuals. It's a rare case to have just the individual's name, in my experience. It does seem rare, but if the town had been sued in addition to the individuals? Correct. Does it make claims against the individuals any less frivolous or any more justified? It no, it doesn't make them any more justified. It doesn't make them any less frivolous. The fact of the matter is they would have had and could have had a legitimate claim against the town for all of the allegations they've asserted in their amended complaint. You're saying they could have had a remedy, if they were right, they could get a remedy against the town so they don't have to bother the individuals and? Absolutely, Your Honor. Absolutely. I didn't mean to cut you off. I'm sorry. But the fact of the Monell case, I think that is a red herring here. The Monell defenses, as you folks probably know, are routinely invoked. It is a rare case that I can ever defend on a case against municipality based on Monell, that there was no policy custom, et cetera, at issue. There is a broad range of case law, and I'm sure Mr. Dinkey knows this, that established that the act of zoning or the act of making comprehensive plan decisions establish a policy as a matter of law. You better be careful what you say or someone will get a transfer. Well, yeah, that's right. I'm going to, I know this is going to get used against me in a future case. We'll see. Giving away all my tricks. What are the Ninth Circuit precedents that follow Bogan and say what are multifactor test is? Well, your Honor, I think the case that you helped author, the Kaumanu, I think I pronounced that correctly, versus County of Maui case is the most recent statement by this circuit on the immunity issue. In that case, I think this Court put together a, basically coalesced the two standards, one from Bogan, which identified two factors to look at, and the other from the San Pedro decision, and also from the Cusich cases. Cusich was 1982. The Kaumanu decision, I think, coalesced those two, the Bogan case and the other standards from San Pedro and Cusich, and put together a four-part test. And I think that's the test in this circuit. And that actually goes to answering a question you posed of counsel, should we be following the Third Circuit cases? Can you give me a cite to that? I'd have to confess I don't always remember the citation. I don't think you were part of that panel. I don't think I was either then. I was. Oh, I apologize, Your Honor. Well, I'm sorry about that. Too many cases. My apologies. It was Judge Alarcon. I'm sorry about that. I've got a better one. Nope. In any event, I apologize. It's the Kaumanu case, and Judge Alarcon was a part of that. But I think that is this circuit's most recent statement of the law on how we define, how we determine whether an action is legislative versus ministerial or quasi-judicial. And I think if you look at those four tests that are set forth in Kaumanu, I think that every allegation in the complaint clearly falls within all four of those ambits. One other thing I'd like to point out on the immunity issue that wasn't discussed in detail in the briefs, but it is supported by law, and that is the fact that in determining whether an action is legislative for purposes of immunity defense, we look to the substantive law of the state in which the action is pending. And it was for that reason that in our brief, we went to some great length to identify state statutes, a variety of court cases that have already made determinations that things like are clearly and unequivocally legislative, that moratoria ordinances, even if they target individual properties, are clearly and unequivocally legislative in nature. The Raines v. City of Leavenworth case, which plaintiffs gave lip service to, they didn't think it was relevant. I think it's right on point. That case involved a rezoning comprehensive plan decision on two small and very discreet parcels with readily identifiable individual owners, and the court there concluded, the State Supreme Court concluded, that those actions were purely and unequivocally legislative. In that case, the parties were trying to argue that they were quasi-judicial or ministerial, and the Court went through a pretty detailed analysis, finding that the fact that there were only two properties at issue didn't change the focus and the ultimate determination there. If you go past the bounds of this, what's been called the South Industrial Area, what do you run into? Well, and I appreciate that question, because that was one of the other questions I was going to follow up on. This property, as I understand it, unless it's been rezoned, is bounded by residential neighborhoods, in part, I believe, on the north and I believe on the east. Directly to the north is the historic district of La Conner, the town of La Conner, and it's all commercial. And I don't know what is directly south of the property, but what is important, and if this goes to the question, I believe you were asking, Your Honor, of counsel, this is an area of town, and in fact, the land, and I think this Court can take judicial notice of this by looking at the website, comprises almost 20 percent of the incorporated area of La Conner. This is not a small, discreet parcel or two or three small, discreet lots. These are big areas, plaintiff's lot is 3.2 acres. The other parcel that's involved in this is, I believe, almost the same size. This is a small town, and I think given the fact that this is a small community with two very large lots that comprise an area of planning under the comprehensive plan, and it's called the South End Industrial Area, that's the way it's denominated. None of the decisions that are challenged in this case referred to the decisions that were made as focusing on just La Conner Associates property. They all reference an area. They talk about the South End Industrial Area, comprised of these two fairly large parcels that comprise about 20 percent of the land area of the incorporated town. And I think that's important, because you need to look at the relationship of the properties in conjunction with the size of the community. This is a small community, less than 800 people. The individuals that are named in this lawsuit are part-time, essentially volunteer public servants. They make about $25 per meeting, about 50 bucks a month, as a nominal stipend. Virtually all of them have full-time jobs, and all of them have families. Most of them have lived in the community for 20 plus years. And those things are all important because it goes to the issue of, one, the propriety of this lawsuit. La Conner Associates most certainly knew all of this. They own property, they're aware of the community, and they knew what kind of effect this was going to have on these people. These are not professional politicians that are getting paid $150,000 a year to govern. They're doing this because they like doing it, because they have a real interest in the community. And I think all of those reasons go right to what Bogan talks about in terms of the purposes underlying the absolute immunity for elected officials. One other point I wanted to make, a question that was raised to Mr. Denke, the Third Circuit analysis that they have relied so heavily on has not been adopted in this circuit. I'm not aware of any case that has either referenced or adopted sub salento, this procedural versus substantive dichotomy in determining legislative decision making. What I can tell you is I believe that the Cajumano case is the most recent statement in this circuit. That buttressed with the San Pedro decision and Bogan, I think, are the three primary cases that this Court should focus on in determining legislative immunity. The Third Circuit decision, I will also point out, has been criticized by other circuits, that distinction between procedural and substantive immunity. And I have to admit, I don't quite understand it. It doesn't, I do not believe it comports with what this circuit has determined or with what the Bogan Court has said. The Ryan case that plaintiffs relied so heavily on predated Bogan by a number of years and I think has been overruled in that court, at least in part, by the, there's another case, the 1994 decision that we cited in our brief and the name escapes me, but that case questioned the propriety of this primary versus, or procedural versus substantive immunity analysis. Real quickly on the attorney fee issue, Your Honor, I think the evidence before this Court, which is basically undisputed, establishes a very good sound basis for an award of attorney fees in this case. They were awarded under Section 1988. I think Judge Peckman would have been within the bounds of her discretion to award those fees under 28 U.S.C. Section 1927. The standard of review on the award of the fees? Both the award of fees and the computation of fees, it's an abusive discretion standard, Your Honor. A decision to view the claims as frivolous or justifying fees, you know, apart from the amount, is that abusive discretion? Yes, it is, Your Honor, yes. Both the imposition of the fees, the entitlement to the fees, and the computation of the fees are under an abusive discretion standard. And I think when you look at the record as a whole, the undisputed five declarations, you know, they claim that, you know, anybody getting sued is going to feel stressed out. Well, it's one thing to say I got sued. It's another thing to say I got sued in my official capacity for doing things that, you know, I'm a lawyer and getting sued for $5 million and sued for punitive damages, which are not insured, typically, and for the kinds of claims that are made in this lawsuit that got a lot of publicity in this community. I noticed, for example, in the record, La Conner Associates announced that it was abandoning its amended complaint against the town by filing a new or sending out a news release to the newspaper. This lawsuit and the claims against these individuals got a lot of publicity. That is reflected in the declarations by these individuals talking about the stress that it caused. A number of these individual defendants testified that people they knew refused to run for elected office because of the publicity of this lawsuit and the threat of personal exposure. Two of the elected officials, Dan O'Donnell, John Stevens, did not run for reelection specifically because of the stress, the anxiety, and the risk of personal exposure. So, Paul, remind me what the standard is that Judge Peckman, in her order, I've got it here and I read it, but what's the precise standard as to entitlement to attorneys? Under Section 1988, it's alternatively vexatious, frivolous, without merit, and I think there's one more, too, but it's one or more of those. Professor vexatious, basically. Yeah. And she found specifically that this lawsuit was brought to harass and intimidate these individuals. She also made a specific finding, Your Honor, that the lawsuit was brought in bad faith. Bad faith is not a requirement for attorney fees under Section 1988, but under the case law in this circuit provides an additional ground or an additional basis to award attorney fees. She didn't hold an evidentiary hearing on that, though, did she? She did not. But I will tell you, Your Honor, that I don't testify and give reasons or the lawyer testify. Well, it is true that she did not hold an evidentiary hearing, but the evidence that was submitted by the five individual defendants went essentially unrebutted. Nobody challenged their sworn testimony as to the impact the lawsuit had, the motives for the lawsuit, the fact that people were not going to run for elected office. How do those speak to the basic standards of whether it was frivolous or without foundation? They don't speak to the merits or why it was frivolous or brought the suit. No. It talks about the impact on the defendants is certainly important, but that's really to a slightly different issue than the 1988 standard, as I understand it. I would agree with that, Your Honor. I think you're correct. But Judge Peckman also in her six-page decision outlined a number of other reasons that fully, I think, support the frivolous nature. And I think one of the best ones is comparing the original complaint against the five defendants with the amended complaint against the town. They are virtually identical. And that brings us right back to the question I posed earlier, and that is why wasn't the town named as a defendant or the defendant in this lawsuit? But you take that one step further and look that after the election cycle had occurred and the two of these defendants did not run for reelection, plaintiffs abandoned their amended complaint. They dismissed it without prejudice. They moved to have it dismissed. I think that's telling that they didn't believe there was a lot of merit to those claims, and those are the same claims they brought against the individuals. Thank you very much. Mr. Long, please. I want to take you back to the procedural question that I raised earlier. The district court did accept, did grant the motion to amend the complaint. Correct. Naming only the town. Correct. Did the original defendants in the first complaint raise any objection as to the present or continuing viability of the original complaint? Well, only insofar as there may have been. The view is the fact that there had been a new amended complaint filed. Well, there was no objection raised by the defendants or the town as to the new amended complaint. Yes. That was not challenged. That was not. At the time the court entered final judgment on the 12E6, there was no presentation of the court saying you don't have to do that because it's now moot because the original complaint is no longer before you. That was not raised. That was not raised. You happen to raise that issue here in your briefs. Not in the briefs, no. Okay. Thank you, Your Honors. Thank you. Just a few points to touch on. One thing I believe Mr. Welter is overstating considerably the percentage of the area of the town of La Conner involved in this dispute. I am informed the area is something like 275 acres for the town as a whole. The parcel in question here and the adjacent parcel amounted to no more than something like six acres of that total. I'm not asking you to rely on that, but I bring it up because I would caution you against relying on any of our statements that are not reflected in the record with regard to what the size of these parcels may be in relation to the town. I understand you had some opportunity to think about it and confer. Even your complaint refers to this as being the south end industrial property or area as if it's something distinctive, which really goes back to the inquiry. Whatever its proportion in terms of the town's total area, is this a unique parcel that the town may well have reason to treat differently than other property? My understanding is that the origin of that term, south end industrial area, is that it was a planning term as used by the city and that the area is, in fact, directly adjacent to other industrial property. That is, it's not a case of simply having an isolated corner of industrial property, which is therefore treated as a planning unit. It's a case of having a continuous band of industrial property along the shoreline and a portion of it having been denominated by the city as the south end industrial area. So I guess, in a sense, I'd say there isn't any natural distinction between this and surrounding industrial property. Is that in the record? I do not believe it is in the record, no. If it's in the record, then we can't really make anything of it, can we? Well, I appreciate that. The only reason I bring some of these things up is that I would not want you to rely on Mr. Walter's statements any more than you would rely on mine on these matters. My one further note in regard to the failure to name the town in the original complaint, I believe that my co-counsel was under the impression at the time that this complaint was filed that he had to first follow state tort claim filing procedures, which require a 60-day notice to a municipality before a lawsuit may be filed. He was, as I'm sure you're all familiar, he was incorrect in his statement. In that belief, I believe that that was the reason why the town was not originally named and that the intent was to join the town as an additional defendant, and I believe that intent is reflected in the joint status report, which is in the record. On the subject of bad faith, it is my understanding Judge Peckman did not make a finding of bad faith. In fact, she declines at page 243 of the record to rule upon the defendant's alternate grounds for the fee award because those would require a finding of bad faith. Now, earlier in the ruling, she makes a reference that says that there's evidence of bad faith, but it really is not clear to me what Judge Peckman really found with respect to bad faith. In any event, what we would submit is there simply isn't any evidence on this record of bad faith. It is an abuse of discretion standard, but at the same time, there has to be something on which the Court can have exercised its discretion. The question of the objective legal reasonableness of the claims raised by the plaintiffs here, we feel they are objectively legally reasonable. Whether the Court concludes that the motion to dismiss was properly granted or should have been denied, the contention that the motion to dismiss should have been denied was not a frivolous, crazy contention. It is, in fact, a contention which I personally have had the good fortune to be on the winning side of cases which are very, very similar, including that Ryan v. Burlington County case of which we spoke earlier, and including another case involving legislative immunity here in this district. And so, you know, to me, it is difficult to accept that a contention which wins the day one day is so frivolous as to warrant an award of fees the next day. Thank you. Thank you. Thank you. We thank both counsel for the arguments. This case is submitted. We will take a brief recess before we move to the final case in today's calendar. The Court will be in recess for 5 to 10 minutes. All rise.
judges: Alarcon, Gould, Clifton